**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| LEAH CROHN, on behalf of | ) | |
| HERSELF and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 13-cv-12248 |
| | ) | |
| v. | ) | |
| | ) | |
| DSW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Leah Crohn ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her counsel, bring this Class Action Complaint against Defendant DSW, Inc. ("Defendant" or "DSW"). Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.    NATURE OF THE ACTION

1.      Mass. Gen Laws ch. 93 § 105(a) addresses and prevents the misuse and improper collection of personal identification information by retailers, and recognizes that there is no legitimate need to obtain such personal information from credit card customers except to the extent it is strictly necessary to complete the transaction.

2.      Specifically, Mass. Gen Laws ch. 93 § 105(a) states that:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal

> identification information shall include, but shall not be limited
> to, a credit card holder's address or telephone number.

3.      This action arises from DSW's violation of Mass. Gen Laws ch. 93 § 105(a)

through its practice of requiring, as a condition of using a credit card to make a purchase,

Plaintiff's and the Class members' personal identification information, specifically their ZIP

codes. This conduct constitutes violations of Mass. Gen Laws ch. 93A § 9.

4.      Accordingly, Plaintiff brings this action on behalf of the below-defined Class and

seeks statutory damages pursuant to Mass. Gen Laws ch. 93A § 9, double or treble damages

pursuant to Mass. Gen Laws ch. 93A § 9, injunctive relief; and costs and attorneys' fees.

## II.    JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).   In the

aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000

exclusive of interest and costs, and there are numerous class members who are citizens of states

other than DSW's respective states of citizenship.

6.      This Court has personal jurisdiction over DSW because this action arises from

DSW's transaction of business in Massachusetts. This Court also has personal jurisdiction over

DSW because, at all relevant times, DSW was registered to do business in the State of

Massachusetts and is therefore subject to general jurisdiction in this State.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) and

1391(c) as DSW is deemed to reside in this District because it is subject to personal jurisdiction

here; a substantial part of the events and/or omissions giving rise to the claims emanated from

activities within this District; and DSW conducts substantial business in this District.

### III.   PARTIES

*Plaintiff*

8.     Leah Crohn is a natural person and citizen of the State of Massachusetts.

*Defendant*

9.     DSW is a corporation incorporated and existing under the laws of the State of Ohio with its principal place of business located at 810 DSW Dr., Columbus, Ohio 43219. DSW conducts business throughout the United States and Massachusetts. Pursuant to 28 U.S.C. 1332(c), DSW is a citizen of the State of Ohio.

### IV.   FACTUAL BACKGROUND

*DSW's Unlawful Collection of PII*

10.     Plaintiff shopped and purchased an item(s) at a DSW retail store location in Holyoke, Massachusetts on March 3, 2012.

11.     To consummate her purchase, Plaintiff used her credit card as her chosen form of payment.

12.     As a condition of using her credit card, Plaintiff was required by DSW to enter personal identification information associated with the credit card, including her full and complete zip code. DSW would not allow Plaintiff to complete her purchase without supplying such information.

13.     DSW is not required by credit card issuers to require this information from consumers.

14.     DSW recorded Plaintiff's zip code into an electronic credit card transaction form. DSW continues to store Plaintiff's personal identification information, including Plaintiff's name, zip code, and credit card number, in its databases.

15.     The Supreme Judicial Court of Massachusetts has determined that a zip code constitutes personal identification information ("PII") within the meaning of Mass. Gen Laws ch. 93 § 105(a). *See Tyler v. Michaels Stores, Inc.*, 2013 Mass. LEXIS 40 (2013).

***Receipt of Unwanted Marketing Materials***

16.     Subsequent to Plaintiff's purchase at DSW – detailed above – Plaintiff received unwanted marketing materials from DSW via United States Mail.

***Consumers Place a High Value on Their PII***

17.     At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[1]

18.     Though Commissioner Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[2]

19.     The FTC has also recognized that consumer data is a new – and valuable – form of currency.  In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

---

[1] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

[2] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency.  The larger the data set, the greater potential for analysis – and profit.[3]

20.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[4] This business has created a new market for the sale and purchase of this valuable data.[5]

21.     In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data. Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[6]

22.     Researchers have already begun to shed light on the considerable value consumers place the privacy of their data. Studies confirm that "when [retailers'] privacy

---

[3] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

[4] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[5] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[6] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[7]

23.     Consumers thus value their personal data highly, and place an economic value on the privacy of that data. In fact, when consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use, they valued 1) the restriction of improper access to their data at between $11.33 and $16.58 per website, and 2) prohibiting secondary use to between $7.98 and $11.68 per website.[8]

## V.     CLASS ACTION ALLEGATIONS

24.     Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as

> All persons from whom DSW requested and recorded personal identification information in conjunction with a credit card transaction occurring in Massachusetts (the "Class").

Excluded from the Class are DSW and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

25.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

26.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the class are so numerous that individual joinder of all Class members is impracticable. On

---

[7] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[8] *Id.*

information and belief, there are thousands of consumers who have been affected by DSW's wrongful conduct. The precise number of the Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from DSW's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

27.     **Commonality and Predominance – Federal  Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a.  whether DSW engaged in the conduct as alleged herein;

   b.  whether DSW's conduct constitutes violations of Mass. Gen Laws ch. 93 § 105(a) and Mass. Gen Laws ch. 93A § 9;

   c.  whether Plaintiff and the other Class members are entitled to statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

   d.  whether Plaintiff and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

28.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

29.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action

vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

30.      **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** DSW has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

31.      **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against DSW, so it would be impracticable for Class members to individually seek redress from DSW's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Violation of Massachusetts Unfair Trade Practices Act**
**Mass. Gen. Laws ch. 93A**
**(On behalf of Plaintiff and the Class)**

32.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33.      Mass. Gen Laws ch. 93 § 105(a) provides:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

34.     DSW is a corporation that accepts credit cards for retail transactions.

35.     Through the practices detailed above, DSW has violated, and continues to violate, Mass. Gen Laws ch. 93 § 105.

36.     Mass. Gen. Laws ch. 93 § 105(c) provides that: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."

37.     Accordingly, DSW's violations of Mass. Gen Laws ch. 93 § 105 constitute unfair and deceptive trade practices within the meaning of Mass. Gen Laws ch. 93A § 2.

38.     Mass. Gen Laws ch. 93A § 9 provides:

> Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper …. Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons.

39.     Plaintiff and the members of the Class have been injured by DSW's collection of their zip codes in connection with their credit card transactions and resultant violations of Mass. Gen Laws ch. 93A § 9.

40.     First, Plaintiff and the Class have been injured because they have received unwanted marketing materials from DSW as a result of having provided their zip codes when using credit cards at DSW.  Second, Plaintiff and the Class have been injured by DSW's sale of

Plaintiff's and the Class' PII to third-parties, which was collected by DSW in violation of Mass. Gen. Laws ch. 93 § 105(c). And <u>third</u>, Plaintiff and the Class have been injured because DSW misappropriated their economically valuable PII without consideration.

41.     More than 30 days prior to filing suit, Plaintiff made a pre-suit demand pursuant to Mass. Gen Laws ch. 93A § 9(3) (the "93A Demand"), in which Plaintiff sought: class-wide relief limited to statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of Mass. Gen Laws ch. 93 § 105; injunctive relief; and reasonable attorneys' fees and costs. DSW did not accept the terms of this demand. A true and correct copy of the 93A Demand is attached here as Exhibit A.

42.     DSW's failure to accept the terms of this demand was made in bad faith, because DSW has knowledge or reason to know that the practice complained of does, in fact, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9, and that Plaintiff and the Class are entitled to the relief demanded as a matter of law.

43.     Accordingly, Plaintiff and the Class are entitled to double or treble damages as a result of DSW's bad faith violations of Mass. Gen Laws ch. 93A § 9.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court enter an order and judgment in her favor and against DSW as follows:

     a. Certification of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3);

     b. Designation of Plaintiff as representative of the propose Class and designation of Plaintiff's counsel as Class Counsel;

     c. Declaration that Defendant's actions, as described herein, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9;

d.  Awarding statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of Mass. Gen Laws ch. 93 § 105;

e.  Doubling or trebling damages pursuant to Mass. Gen Laws ch. 93A § 9;

f.  Enjoining Defendant's continued violations of Mass. Gen Laws ch. 93 § 105, pursuant to Mass. Gen Laws ch. 93A § 9;

g.  Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

h.  Awarding Plaintiff and the Class pre- and post-judgment interest; and

i.  Such other and further relief as may be just and proper.

Dated: September 11, 2013                    Respectfully submitted,

                                             LEAH CROHN, on behalf of
                                             themselves and all others similarly situated


                                             By: _____
                                                 One of the Attorneys for Plaintiff
                                                 And the Proposed Putative Classes


Joseph J. Siprut*
*jsiprut@siprut.com*
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois  60602
Tel:  312.236.0000
Fax:  312.948.9196


Alexander Shapoval
*ashapoval@siprut.com*
SIPRUT PC
1 Winnisimmet Street
Chelsea, MA 02150
Tel: 617.889.5800
Fax: 617.884.3005

* *Pro Hac Vice* application to be submitted

4850-5737-8324, v.  3